UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    :

    -v.-                                    :
                                       S2 09 Cr. 430 (CS)
SONNY DESPOSITO,                             :

             Defendant.                  :

- - - - - - - - - - - - - - - - - -X


## SENTENCING MEMORANDUM OF THE UNITED STATES



PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Sarah R. Krissoff
Assistant United States Attorney
    -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    :

    -v.-                                        :
                                    S2 09 Cr. 430 (CS)
SONNY DESPOSITO,                            :

              Defendant.              :

- - - - - - - - - - - - - - - - - -X

### SENTENCING MEMORANDUM OF THE UNITED STATES

        The United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Sarah R. Krissoff, Assistant United States Attorney, of counsel, respectfully submits this Sentencing Memorandum in advance of the sentencing of Sonny Desposito, which is scheduled for May 23, 2011, at 2:00 p.m.  The Government agrees with the Guidelines calculations set forth in the Presentence Investigation Report ("PSR"),[1] except that the Government

_____

    [1]    As set forth in the PSR, the total combined offense level for Counts One and Three is 28.  PSR ¶ 35.  Count Two carries a mandatory minimum term of 10 years' imprisonment that must run consecutively to any other sentence imposed.  PSR ¶ 23. According to the PSR, the defendant has two criminal history points, resulting in a Criminal History Category of II and an applicable Guidelines range of 87 to 108 months' imprisonment on Counts One and Three, plus the mandatory, consecutive 120 months' imprisonment on Count Two.  PSR at 25 and ¶ 43.

        The Government believes that, pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(f), the defendant has one additional criminal history point which is not reflected in the PSR, stemming from his April 12, 2006 conviction, upon a plea of guilty, in Volusia

respectfully submits that the defendant should receive an additional two-level enhancement to his offense level because he attempted to obstruct justice by testifying falsely at trial. Accordingly, the Government respectfully submits that the applicable Guidelines range on Counts One and Three should be 108 to 135 months' imprisonment.  Count Two carries a mandatory sentence of 120 months' imprisonment which must run consecutively to any other sentence imposed.  For the reasons set forth below, the Government submits that a sentence within the Guidelines range of 108 months to 135 months' imprisonment on Counts One and Three, plus the mandatory, consecutive 120 months' imprisonment on Count Two, is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a), given (1) the nature and circumstances of the offenses and the history and characteristics of the defendant, and (2) the need for the sentence imposed (A) to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.  *See* 18 U.S.C. § 3553(a)(1) and (2).

---

County Circuit Court, Florida, for carrying a concealed weapon, electric weapon, or device, for which he was sentenced to a withholding of adjudication and a $233 fine.  Thus, the defendant has three criminal history points, which still results in a Criminal History Category of II.

BACKGROUND

I. **The Trial**

Desposito was convicted, after trial, of: (1) the armed bank robbery of the M&T Bank in Chestnut Ridge, New York, on or about January 23, 2009, in violation of Title 18, United States Code, Sections 2113(a) and (d) (Count One)[2]; (2) using fire to commit bank robbery, in violation of Title 18, United States Code, Section 844(h)(1) (Count Two); and (3) obstructing an official proceeding, or attempting to do so, in violation of Title 18, United States Code, Section 1512(c)(1), in connection with his attempt to fabricate evidence relating to a can of lighter fluid (Count Three).

The proof at trial established, in sum, that on January 21, 2009, the defendant borrowed a Cadillac Sedan Deville (the "Cadillac") from his friend, Joe Helfenbein, and drove it to Chestnut Ridge, New York. There, he attempted to set fire to a car that was parked in the driveway of a residence on Bellows Lane by stuffing something inside of the fuel tank of the car and lighting it on fire. Although there was some damage to the fuel tank, the fire did not take, and the car sustained only minimal

---

[2]     The original five counts in the superseding indictment, S2 09 Cr. 430 (CS) were renumbered during the trial, after the original Counts Two and Three were dismissed by the Court pursuant to Rule 29. Accordingly, the original Count Four became Count Two, and the original Count Five became Count Three.

damage.   PSR ¶ 10.

On January 22, 2009, the defendant went to an A&P grocery store and had his friend, Betty Mastrarrigo, who was an A&P employee, purchase a can of America's Choice brand lighter fluid for him.   PSR ¶ 11.   The next day, the defendant, who was again driving the Cadillac, drove to another residence in Chestnut Ridge and lit another car on fire in order to divert the police.   This car quickly became engulfed in flames and was completely destroyed.   PSR ¶ 12.

Shortly after setting that car on fire, the defendant went to the nearby M&T Bank.   He entered the bank wearing a black mask and sunglasses and holding what appeared to be a handgun. Inside, he forced a customer to stay inside and robbed the bank, threatening the teller that if she did not give him all of her money, he would shoot everybody in the bank.   The defendant also threatened to kill the teller if she gave him any dye packs or bait bills and said he would "hunt [her] down and kill [her], bitch."   After the teller gave the defendant approximately $10,000 in cash and a number of checks, the defendant left the bank and drove to Beckerle Drive, a residential street in Pearl River.   PSR ¶ 13.   There, he put a number of items, including a black knit cap with the eye holes cut out of it, another hat, a pair of sunglasses, a plastic replica handgun, a jacket, two vehicle license plates, a pillowcase, a pair of sneakers, and

-4-

several other items in a pile at the end of the street and lit the pile on fire using a can of America's Choice lighter fluid. PSR ¶ 14.  Shortly thereafter, the defendant paid to have the tires changed on the Cadillac that he had used during his crimes.

The evidence presented at trial further proved that, while awaiting trial, the defendant, wrote letters from jail laying out an elaborate scheme to fabricate evidence. Specifically, the defendant sent three packets of letters to his friend, Besnik Ljuljanaj, with instructions that Mr. Ljuljanaj pass some of those letters along to other people, including the defendant's brother and Ms. Mastrarrigo.  In the letters, the defendant tried to persuade Mr. Ljuljanaj, his brother, and Ms. Mastrarrigo to plant a piece of evidence – a new can of America's Choice lighter fluid – that he could use at trial to mislead the jury.  The plan was never executed because Mr. Ljuljanaj's father obtained the packets of letters before they reached his son and thereafter, the letters were turned over to the police.  PSR ¶¶ 16-17.

In addition to trying to persuade others to help him fabricate evidence, the defendant also attempted to establish a false alibi by urging Mr. Ljuljanaj to tell the authorities that the defendant was at Mr. Ljuljanaj's house on January 23, 2010, at the time of the bank robbery, the car fire, and the Beckerle Drive fire.  Finally, the letters also revealed that the

-5-

defendant tried to persuade Mr. Ljuljanaj to tamper with a victim in another criminal matter pending against the defendant in New Jersey state court.  Specifically, the defendant repeatedly asked Mr. Ljuljanaj to pretend that Mr. Ljuljanaj was a victim and witness advocate and call the victim in the other criminal matter and try to convince her not to testify against him in that case. PSR ¶ 18.

## DISCUSSION

The Government respectfully submits that a sentence within the Sentencing Guidelines range of 108 to 135 months' imprisonment on Counts One and Three, and 120 months' imprisonment on Count Two, would be sufficient, but not greater than necessary, to meet the purposes of sentencing outlined in Section 3553(a)(2).

## I.   Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory.  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  As the Second Circuit has remarked *en banc*, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United*

-6-

*States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).  The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita v. United States*, 127 S. Ct. at 2464.

After making the initial Guidelines calculation, a sentencing judge must then consider seven factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in Section 3553(a)(2). Those purposes are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational

-7-

or vocational training, medical care, or other
correctional treatment in the most effective
manner.

18 U.S.C. § 3553(a)(2).  The statute instructs judges to consider
the purposes of sentencing and the following factors: "the nature
and circumstances of the offense and the history and
characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the
kinds of sentences available," *id.* at § 3553(a)(3); the
Guidelines range itself, *see id.* at § 3553(a)(4); any relevant
policy statement by the Sentencing Commission, *see id.* at
§ 3553(a)(5); "the need to avoid unwarranted sentence disparities
among defendants," *id.* at § 3553(a)(6); and "the need to provide
restitution to any victims," *id.* at § 3553(a)(7).

**II.  Desposito Should Receive A 2-Level Enhancement For
Obstructing Justice At Trial**

U.S.S.G. § 3C1.1 calls for a 2-level enhancement of a
defendant's offense conduct "if (a) the defendant willfully
obstructed or impeded, or attempted to obstruct or impede, the
administration of justice during the course of the investigation,
prosecution, or sentencing of the instant offense of conviction,
and (B) the obstructive conduct related to ... the defendant's
offense of conviction and any relevant conduct."  As set forth in
Application Note 7 to U.S.S.G. § 3C1.1, even when a defendant has
already received a 2-level increase in his total offense level
due to an obstruction of justice conviction, an additional 2-

-8-

level enhancement may be appropriate where the defendant committed "a significant further obstruction during the investigation, prosecution, or sentencing of the obstruction offense itself." Here, the defendant's perjury qualifies as such a "significant further obstruction." *See U.S. v. Fredette*, 15 F.3rd 272, 275 (2d Cir. 1994) (holding that an additional 2-level increase was appropriate when the defendants "acted in an effort to further obstruct the investigation and prosecution" by submitting a false affidavit).

During his testimony, Desposito lied repeatedly about material matters. After sitting through all the testimony at trial, the defendant wove together a false and preposterous story about where he was and what he was doing on January 23, 2009, and in the days before and after. The defendant also tried to falsely implicate his friend, Besnik Ljuljanaj, in the robbery and fires. Among other things, the defendant testified falsely on the following points:

- Desposito claimed that he was at Mr. Ljuljanaj's house on January 23, 2009, from approximately 9:45 a.m. until early afternoon (the time of the fires and bank robbery). Tr. at 756-58.

- Desposito testified that, during the time he was at Ljuljanaj's house on January 23, 2009, Ljuljanaj left in Desposito's car for a period of

-9-

time.  Tr. at 755-56.

- Desposito testified that Ljuljanaj instructed him to obtain the key's to Joe Helfenbein's car, and to buy lighter fluid in order to BBQ.  Tr. at 753.

- Desposito claimed that he changed the tires on Joe Helfenbein's car at the behest of Ljuljanaj, and that Ljuljanaj paid for the new tires.  Tr. at 761-62.

- Desposito denied lighting the Jeep on fire on January 23, 2009, robbing the M&T Bank in Chestnut Ridge the same day, and setting a fire on Beckerle Drive after the bank robbery in order to destroy the evidence.  Tr. at 819.

- Desposito claimed that he wrote the letters to his brother and others from the Westchester County Jail, laying out an elaborate scheme regarding the can of lighter fluid that was found at the Beckerle Drive fire, with the expectation that law enforcement would read the letters.  Desposito claimed that the purpose of the letters was to provide Mr. Ljuljanaj with an alibi, and that the letters were not obstructive but rather were constructed in such a way "that [Mr. Ljuljanaj] could exonerate me without directly implicating

-10-

himself."  Tr. at 776-77.

In telling these stories, the defendant intentionally gave false testimony at trial about material matters, and attempted to blame his crimes on others.  This false testimony was directly contradicted by the evidence at trial, including the testimony of Mr. Ljuljanaj and Mr. Helfenbein.  The defendant's false statements, if believed, would "tend to influence or affect the issue under determination."  *See* U.S.S.G. § 3C1.1, Appl. Note 6.  Because the defendant lied throughout his far-fetched testimony, the Government respectfully submits that the defendant should receive an additional two-level enhancement.

## III. AN ANALYSIS OF THE SECTION 3553(a) FACTORS SUPPORTS A SENTENCE WITHIN THE SENTENCING GUIDELINES RANGE

A sentence with the Guidelines range of 108 to 135 months' on Counts One and Three, and 120 months' imprisonment on Count Two, to run consecutively to any other sentence imposed, would properly reflect the nature and circumstances of the crimes, the need for the sentence to reflect the seriousness of the offenses, and provide just punishment.  Even if the Court declines to impose an additional 2-level enhancement under U.S.S.G. § 3C1.1 as a result of the defendant' false testimony, the Government submits that a sentence within the higher Sentencing Guidelines range is fair and appropriate under 3553(a), given the defendant's perjury as well as the defendant's conduct with regard to the Beckerle Drive fire, where he burned

-11-

evidence relating to the bank robbery. While the two counts concerning the Beckerle Drive fire in the Superseding Indictment were dismissed at trial pursuant to Rule 29, the evidence at trial showed conclusively that Desposito committed the acts underlying those counts.

Through his actions on January 21, 2009 and January 23, 2009, Deposito terrorized the communities of Chestnut Ridge and Pearl River, New York. The defendant's conduct was violent and dangerous. He threatened and terrified the employees and customers inside of M&T bank with his words and a replica gun. By setting three separate fires in residential neighborhoods, he endangered the safety of others. Obviously, this was very serious conduct, and a sentence within the applicable Guidelines range would adequately reflect that.

Further, the defendant's crimes involved meticulous planning and careful execution, and while the fires and bank robbery occurred over the course of a few days, the defendant's criminal conduct was certainly planned well in advance. He clearly spent time identifying a bank to rob and finding locations to set the fires. After the robbery and before he was arrested, the defendant tried to cover his tracks by changing the tires on the Cadillac that he used to commit the crimes. Moreover, the defendant's criminal conduct continued well after his arrest. While the defendant was incarcerated, he committed

yet another crime by trying to enlist others to fabricate evidence and create a false alibi in order to mislead the jury that would eventually hear his case.  As set forth in the letters sent by the defendant from jail, the defendant concocted an elaborate scheme to obtain a new can of America's that he could claim was the can that he had purchased at the A&P, instead of the can that was recovered at the Beckerle Drive fire.  This kind of criminal behavior, when successful, can subvert the legal system and should be met with a substantial sentence.

A sentence within the applicable Guidelines range would also provide adequate specific and general deterrence.  It goes without saying that the defendant's crimes were violent and endangered the community and warrant a lengthy sentence that sends a strong message to others inclined to commit similar crimes.  With regard to specific deterrence, the defendant's history and characteristics demonstrate that he needs to be deterred from committing other dangerous crimes and that he is a person from whom the public needs to be protected.  In January 2009, when the defendant robbed the M&T Bank and set the fires, he was awaiting trial on two separate armed robbery cases in New Jersey state court and was out on bail conditions.  PSR §§ 44, 48.[3]  The fact that the defendant committed the crimes here at

---

[3]     According to the Bergen County Prosecutor's Office, both of those cases are still pending against the defendant.

-13-

the time he was facing charges on two other armed robbery cases and was supposed to be complying with bail conditions further demonstrates his complete disregard for the law and the legal system.  Additionally, the defendant's three prior criminal convictions,[4] within a relatively short period of time, while not felonies, also demonstrate that the defendant is unwilling to follow the law and refrain from committing crimes.  Thus, the defendant's history and characteristics underscore the need for a significant sentence to both provide adequate specific deterrence and protect the public from further crimes by the defendant.

---

[4]    Two of the convictions were for possession of controlled substances, and the third conviction was for carrying a concealed weapon.  PSR ¶¶ 37, 41, 51.

**CONCLUSION**

For the foregoing reasons, the Government believes that the applicable Guidelines range is 108 to 135 months' on Counts One and Three, and 120 months' imprisonment, consecutive to any other sentence imposed, on Count Two, and that a sentence within that range would be fair and appropriate.


Dated:     White Plains, New York
           May 19, 2011


                    Respectfully submitted,

                    *Sarah R. Krissoff* /RGM
                    Sarah R. Krissoff
                    Assistant United States Attorneys
                    Tel.: (212) 637-2232


                        -15-

<u>CERTIFICATE OF SERVICE</u>

Yashema Davis deposes and says that she is employed in the Office of the United States Attorney for the Southern District of New York.

That on May 19, 2011, she served via facsimile a copy of the **Government's Sentencing Memorandum** in <u>United States  v. Sonny Desposito</u> S2 09  Cr. 430 (CS) to:

Joseph A. Vita, Esq.
327 Irving Avenue
Port Chester, NY 10573
Fax: (914) 690-2007

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Yashema Davis

Executed on:  May 19, 2011
White Plains, New York